AFFIDAVIT FOR CRIMINAL COMPLAINT

✓ ___ FILED ___ ENTERED
____ LOGGED _____ RECEIVED

**3:00 pm, Jul 19 2021**

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

I, Wendy DuShane, being duly sworn, depose and state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent ("SA") of the United States Secret Service ("USSS") and have been so employed since July 2000. I am currently assigned to the Baltimore Field Office, Cambridge Maryland Domicile. As part of my duties, I investigate offenses involving the production, possession, and passing of counterfeit United States currency. In that capacity, I have become familiar with the investigation and prosecution of crimes concerning counterfeit obligations or securities of the United States, including the use of various criminal methods to perpetrate these frauds.

2. I have participated in numerous investigations to include cases involving the production, possession, and passing of counterfeit United States currency, also referred to as Federal Reserve Notes ("FRNs"). Further, I have received extensive training regarding the production and technical features of genuine currency. I have also been trained in the detection of counterfeit currency and methods of operation used by counterfeiters.

## **PURPOSE OF AFFIDAVIT**

3. I make this Affidavit in support of a Criminal Complaint against Tina DEMPSEY, Melissa WARRINGTON, Jason TOWERS, and Chad GARMAN. As described below, this Affidavit sets forth probable cause to believe DEMPSEY, WARRINGTON, TOWERS and GARMAN violated Title 18 U.S.C. § 371, Conspiracy to Commit Offense or Defraud the United States. More specifically, that on or about and between May 22, 2021 and

1:21-mj-2049 to -2052 TMD

May 26, 2021, in the District of Maryland and elsewhere, DEMPSEY, WARRINGTON, TOWERS, and GARMAN Conspired to Utter Counterfeit Obligations (18 U.S.C. § 472), in violation of 18 U.S.C. § 371.

4.   I make this Affidavit based on personal knowledge gained from my participation in this investigation; information gained from my training and experience; information received from other law enforcement sources; merchant interviews; cell phone data; and statements made by DEMPSEY, WARRINGTON, and GARMAN.  Not all of the facts known to me have been included in this Affidavit, only those necessary to establish probable cause that the above-cited violations were committed by the above-named suspects.

## **BACKGROUND-SUSPECTS**

5. Tina DEMPSEY, DOB ███/1979, is believed to be a resident of the State of Delaware and has a history of arrests and citations from 1999 to 2021.  Her arrests/citations include speeding, failure to obey a traffic device, exceed 25 MPH in a residential area, speeding in excess of 50 MPH on a two lane roadway, cruelty to animals, traffic offenses including expired tags, failure to have required insurance, and driving on a suspended license.  In 2018 she was charged with possess /consume a controlled substance and possession of drug paraphernalia.

6. Melissa WARRINGTON, DOB ███/1975, is a resident of Kent County, Maryland, and has no known criminal history.

7. Jason TOWERS, DOB ███/1975, is a resident of Kent County, Maryland, and has a history of arrests, criminal convictions, and incarceration from 1994 to 2018.  In 1994 he was arrested for robbery, robbery accessory before the fact, deadly weapon with intent to injure, conspiracy, malicious destruction of property, assault, and false imprisonment; in 1997 false

2

statement to officer; in 2000 second degree burglary, theft of motor vehicle, unauthorized use of a livestock animal, forgery, uttering false document; in 2001 theft less than $300, forgery, uttering false document; in 2005 possession of marijuana, paraphernalia, failure to appear; in 2010 burglary (first, third, and fourth degree including theft over $500); in 2016 assault; in 2017 arson/threat, trespass private property; in 2018 assault on a LE officer, violating an *ex parte* protection order. There were convictions and time served sentences imposed for many of the above offenses.

8. Chad GARMAN, DOB ███/1983, is a resident of the State of Pennsylvania, and has a history of arrests, criminal convictions, and incarceration from 2001 to 2017. In 2001 he was arrested for burglary, retail theft, receiving stolen property; in 2003 retail theft; in 2004 simple assault; in 2006 retail theft, disorderly conduct; in 2007 criminal trespass, forgery, theft, aggravated assault, simple assault, reckless endangering, criminal trespass; in 2011 forgery, theft by deception, receiving stolen property; in 2016 terroristic threats, criminal mischief; in 2017 forgery, theft by deception. GARMAN is presently incarcerated in Manheim Township, Pennsylvania pending trial for forgery. It is alleged that on December 10, 2017, GARMAN passed a counterfeit $50 FRN. When he was apprehended, GARMAN was also in the possession of five altered notes that appeared to have the ink washed, which is indicative of printing counterfeit currency. A plea hearing for these charges is scheduled on July 19, 2021.

## PROBABLE CAUSE

9. On May 24, 2021, an investigation was initiated by the Chestertown Police Department ("CPD") into the passing of counterfeit U.S. Currency at the Dollar General store in Chestertown, MD earlier that day. In coordination with the USSS, DEMPSEY, Melissa WARRINGTON, and GARMAN were positively identified based on video surveillance, store

3

manager and cashier interviews, review of bank deposits, cell phone data and suspect interviews. An additional suspect was identified as TOWERS, who is in a relationship and lives with WARRINGTON.

10.  On May 24, 2021, at approximately 0909 hours, CPD Officer Mary McLaughlin responded to the Dollar General in reference to a report that a subject had passed four $100 counterfeit FRNs between the hours of 0750-0805.  Dollar General manager Riana Raybin advised that an individual, later identified as DEMPSEY, had passed the notes and that additional counterfeit $100 FRNs had been recently received by BB&T bank from the Dollar General deposit box.

11.  Officer McLoughlin contacted BB&T Bank and identified six additional FRNs that had been received by BB&T Bank from Dollar General deposits.  Surveillance video from May 22 to May 24, 2021 was reviewed which showed DEMPSEY and additional suspects, later identified as WARRINGTON and GARMAN, passing counterfeit $100 FRNs at the Dollar General in Chestertown.

12.  Continuing on May 24, 2021, at approximately 0932 hours, Officer McLoughlin responded to WARRINGTON and TOWERS' residence located at 123 Philosophers Terrace, Lot#7, Chestertown, MD.  The Dollar General store can be viewed from the residence and Officer McLoughlin was familiar with the location as she had recently been there for multiple reports regarding stolen vehicle tags at the residence.  Officer McLoughlin noted a silver Nissan Rogue bearing Oklahoma temporary tags, which seemed out of place, so she took a photograph. She eventually made contact with WARRINGTON at the residence who advised that the Nissan Rogue was not her car, but she would move the vehicle. WARRINGTON was not specifically asked about the counterfeit currency, however, she spontaneously remarked, "I know why you

4

are here, but I can't talk about it now." She then pulled out a piece of paper from her bra and stated, "it was all Tracy Smith." At that time Officer McLaughlin did not know what WARRINGTON was referring to.

13. Per subsequent forensic analysis of cell phones which are outlined in the "TIMELINE" starting on page 12 of this Affidavit, around the same time as Officer McLoughlin initiated her investigation and contact with WARRINGTON, text messages from TOWERS to GARMAN and other individuals indicate that the police were inquiring about possible criminal activity linked to the residence.

14. On May 25, 2021, at approximately 1130 hours, Officer McLoughlin returned to WARRINGTON AND TOWERS' residence to serve a criminal summons for an unrelated case related to TOWERS and was approached by ▇▇▇▇▇▇▇▇▇▇▇ who provided Officer McLoughlin with an uncut sheet of two $50 counterfeit FRN's with the serial number JJ 24858662A which he stated ▇ recovered from WARRINGTON and TOWERS' residence. (An image of this counterfeit note was later recovered from GARMAN's cell phone.) ▇▇▇ said he believed that WARRINGTON and TOWERS had packed up heroin, methamphetamine, and counterfeit money, and then abandoned the residence. ▇ said ▇ did not believe they were returning.

15. Continuing on that date, I responded to the CPD and met with Officer McLoughlin. I visually inspected the notes and confirmed they were counterfeit. According to USSS records, the passing history of this $50 counterfeit FRN was extensive. The note first appeared in Joplin,

MO on 1/7/2020 and was passed over 100 times, in mostly Tulsa, OK. The most recent activity was in St. Robert, MO on 5/2/2021. Together Officer McLoughlin and I responded to WARRINGTON and TOWERS' residence to further interview █████.

16. Officer McLoughlin had contact information for WARRINGTON from previous interactions and texted her and asked her location. WARRINGTON voluntarily gave her geocoordinates (Shaw Avenue and Route 13 in Harrington, DE). Officer McLoughlin contacted the Delaware State Police ("DSP") who responded to WARRINGTON'S location and surveilled the Nissan Rogue with Oklahoma tags; TOWERS, WARRINGTON, and DEMPSEY were inside the vehicle.

17. DSP Troopers noted the vehicle had expired Oklahoma tags and initiated a vehicle stop and ran a canine free air sniff on the outside of the vehicle. The canine alerted on the presence of drugs. The driver, DEMPSEY, did not have registration or insurance information for the vehicle. Delaware Division of Gaming Enforcement Unit Detective James Jacko advised that troopers viewed drug paraphrenia (a crack pipe) in the vehicle in plain view. Based on the totality of the circumstances, the DSP Troopers initiated a search of the vehicle.

18. TOWERS, seated in the rear of the vehicle, initially lied to the officers about his identity. From the area where TOWERS had been sitting, an uncut sheet of a front and back $100 counterfeit FRN was recovered (Serial Number ("S/N") HE 63614383E). This S/N was one of the same as the counterfeit FRNs passed by DEMPSEY at the Dollar General in Chestertown. DSP Troopers also recovered an Epson printer/scanner/copier, Eastport backpack (gray in color) containing uncut counterfeit FRNs, scraps indicating counterfeit manufacturing, names and the personal identifying information of potential identity theft victims (two of which

were in the Tulsa, OK, area, where FRNs with the same S/N had been passed), 4 bottles of printer ink, a sheet of uncut $100 counterfeit FRNs, and a black LG mobile phone.

19.  Your Affiant and DSP Troopers interviewed TOWERS, WARRINGTON, and DEMPSEY separately.  TOWERS advised the gray backpack, the black LG phone, and the Epson printer/scanner/copier belonged an individual he knew as "Chad" (later identified as Chad GARMAN, AKA "Philly").  TOWERS advised that GARMAN printed the counterfeit money and DEMPSEY passed it.  TOWERS claimed not to be involved and that he was only using GARMAN's car because GARMAN had stolen his car, which TOWERS stated he had previously reported stolen.  (Note, it was later determined TOWERS had not reported it stolen until after this vehicle stop.)  TOWERS said that GARMAN'S identity was on a genuine birth certificate that was in the gray backpack, which was subsequently confirmed.  TOWERS further advised that GARMAN used this black LG phone to transfer images of the counterfeit FRN's to the printer/scanner/copier for the purpose of manufacturing counterfeit FRNs.

20.  Your affiant interviewed DEMPSEY who admitted to passing the counterfeit U.S. Currency, and also stated that GARMAN was printing the counterfeit U.S. Currency, but claimed TOWERS and WARRINGTON were also passing it, and that DEMPSEY was only receiving a small percentage of the profits. DEMPSEY further advised that she knew GARMAN and an individual known to her as "Tracy Smith" for about a month and they had been staying with TOWERS and WARRINGTON.  DEMPSEY said GARMAN told her that he makes counterfeit credit cards as well, although she had not seen him make the cards. She further advised she was scared of GARMAN and he had threatened her multiple times.  DEMPSEY stated that she was addicted to methamphetamine and was homeless and thus the reason she stayed with this group of people.

21. WARRINGTON was interviewed by the Delaware State Gaming Enforcement Officers on scene. She stated that she was getting married to TOWERS in four days and that they were on their way to get the rest of her belongings at her ex-husband's house in Greenwood, DE. WARRINGTON stated that she and TOWERS had a friend from Oklahoma visiting them at their home in Chestertown. She said that she and TOWERS were the only two people living in the house. The friend from Oklahoma was possibly named "Tracy White" (AKA Tracy Smith) and that "Tracy" was dating a male from Pennsylvania named "Chad" (AKA Chad GARMAN). She stated that both Smith and GARMAN came to WARRINGTON and TOWERS' house on the previous Sunday night (May 23, 2021) and supposedly drove from Oklahoma in the Nissan Rogue that WARRINGTON, TOWERS, and DEMPSEY were occupying when stopped by DSP Troopers. WARRINGTON said that on Monday, May 24, 2021, Smith and GARMAN left the Chestertown residence and stated that they were going to the store down the road and would be back. She said they took TOWERS'S vehicle to the store, but WARRINGTON claimed not to know why. She said she later texted Smith and GARMAN to meet and swap their vehicles and they agreed to meet at the Food Lion near her house. WARRINGTON said she let the local authorities know what was going on. She said Smith and GARMAN never showed up at the Food Lion. She further stated that DEMPSEY was homeless and Smith and GARMAN brought her to the residence with them. WARRINGTON said that Smith and GARMAN had only been at her residence for two days and that they left DEMPSEY. WARRINGTON believed it was because Smith and GARMAN did not want to be bothered with DEMPSEY anymore. She said that Smith and GARMAN were printing counterfeit money and that the printer was in the trunk of the Nissan Rogue, and that they were using counterfeit money to buy rechargeable gift cards at the dollar stores because those stores did not examine the bills well.

22. TOWERS, WARRINGTON, and DEMPSEY voluntarily released the items described above that were recovered from the vehicle, which was towed and impounded. Below is a partial list of items recovered from the vehicle:

- 43 pages of images of attempted copies of $100 FRNs, partial images of FRNs front and back bearing S/N HE 63614383E (these notes bear the same S/N as the uncut sheet of counterfeit currency recovered from the back of the vehicle with TOWERS);

- Epson WorkForce Pro WF-4820 printer/scanner;

- Four bottles of Epson printer ink inside a sock that was in TOWERS'S duffle bag that he stated belonged to him;

- Scissors;

- 57 blank sheets of printer paper similar to that which was used to print the images of counterfeit $100 FRNs front and back with some remnants of green ink;

- Printer paper and resume paper;

- Dark green gel pen; and

- Counterfeit detector pen.

23. DEMPSEY advised that GARMAN carried several cell phones and provided all of the phone numbers she had for him: ████-1893, ████-5563, ████-3789, ████-6302, and ████-8613. TOWERS stated he believed the number of the black LG cell phone was ████-1893; it was later determined that this cellular phone was in the possession of GARMAN upon his arrest by the Virginia Beach Police on May 26, 2021. Based on this information, text messages and phone calls listed in the "TIMELINE" below that were sent/made from TOWERS to GARMAN, some of the text messages may not have been received. On June 2, 2021, Magistrate Judge Thomas M. DiGirolamo authorized a search warrant for the LG phone

recovered from the Nissan Rogue. See Mag. No. 21-MJ-1644 TMD. Anne Arundel County Police Detective Hogan downloaded the device for the search and discovered it had been wiped.

24. Continuing on May 26, 2021, GARMAN was detained and arrested by the Virginia Beach Police Department in the vehicle TOWERS had reported stolen. Norfolk Resident Office USSS SA Savannah Hill and SA Christopher DeFelice interviewed GARMAN at the Virginia Beach Police Department where he was *Mirandized* and agreed to waive his rights and answer questions. GARMAN admitted to manufacturing and passing counterfeit U.S. Currency. He said he was currently traveling with his "wife," later identified as Tracy Smith, and avoiding places where he had outstanding warrants.

25. GARMAN said in order to make the counterfeit money, he used a scanner/printer to scan genuine notes and then printed the counterfeit notes on genuine currency paper. In order to remove ink from the genuine notes, he applied "purple power" degreaser, microwaved the note, and scrubbed off the ink with a toothbrush. After the ink was removed, he printed the higher denomination note, in this case $100 denominations, on top.

26. GARMAN said he was making and passing the least amount of counterfeit in order to survive. He estimated he passed three to four $100 notes per week for approximately six months. He said he made enough so that he and Smith could continue to live at a hotel every week.

27. It is unclear how GARMAN and Smith connected with DEMPSEY, but GARMAN corroborated DEMPSEY's story that they took her in because she had nowhere else to go. He stated he met TOWERS and WARRINGTON through DEMPSEY but was very vague about the connection. (Note that this was different from what DEMPSEY and WARRINGTON told authorities. DEMPSEY said she believed GARMAN knew TOWERS previously and

WARRINGTON said TOWERS spent time with GARMAN in jail.  TOWERS also has a criminal history including forgery, false statements, and burglary.)  GARMAN did not admit to stealing TOWERS'S vehicle.

28. GARMAN stated that TOWERS, WARRINGTON, and DEMPSEY all "played a part in it."  He said the others were not "working with him" but they started making it themselves. He said once they saw how easy it was, they realized they could do it on their own.  GARMAN admitted to making four counterfeit notes using the degreasing process while he was staying with TOWERS, WARRINGTON, and DEMPSEY in Chestertown.  He spent one at the Dollar General, Smith spent one and he gave "them" two.  He asked them for $20  for each note. GARMAN said he didn't make more notes because he did not want to have "stacks of money" on him.

29.  GARMAN said "they" passed the counterfeit at the Dollar General in Chestertown "four or five times."  He said he told TOWERS, WARRINGTON, AND DEMPSEY where and how to pass the counterfeit, but was not happy they passed such large amounts there.  He said he and Smith had left for the casino in Baltimore and by the time he came back most of the bills had been passed.  He said Smith told him "they" went over to the Dollar General and spent $500-$600.

305.  GARMAN said he didn't make the additional notes and that they "ran off on their own."  He stated that he knew it was wrong and he never made anyone do it.  GARMAN stated that TOWERS, WARRINGTON, AND DEMPSEY "ran rampant" with it on their own.  He left his equipment in the house because "they" told him the "cops were coming." He said, "they rolled" and left everything behind.  In GARMAN's wallet was one counterfeit $100 FRN with the S/N HL 63614382E (same S/N as the notes passed at the Dollar General in Chestertown).

GARMAN also had photos of $100 FRNs on his phone with S/N's HL 83614382E and HE 42614682E.

31. GARMAN gave written permission to the USSS to access his phone (215-954-1893) which was downloaded by Virginia Beach Police after the interview.  On May 28, 2021, I received written consent from TOWERS, WARRINGTON, and DEMPSEY to search the following phones: (1) WARRINGTON - Black "Orbic" cell phone number (443-206-3465); (2) TOWERS – Black "Blu" cell phone number (410-708-3484); and (3) DEMPSEY – Black "LG" cell phone number (302-494-6492).

32.  The text messages, call logs, geolocation data and photographic images from all four phones indicated that TOWERS, WARRINGTON, and DEMPSEY conspired to leave Chestertown once they were aware that the CPD was investigating the passing of counterfeit currency.

**TIMELINE**

33. Below is an approximate timeline of counterfeit passing activity and the attempt to evade law enforcement based on cell phone text communications, geolocation data, surveillance video, law enforcement actions, and GARMAN's interview.  According to the manager of the Dollar General, the counterfeit notes passed were the only $100 notes passed during the time frames on the store's surveillance video, still pictures of which are below.  All times approximate Eastern Daylight Time.

34. MAY 22, 2021 - At 1841 hours, DEMPSEY reloaded a Greendot card for $200 using two counterfeit $100 FRNs at the Dollar General store.



At 1847 hours, DEMPSEY reloaded another Greendot card for $210 using two counterfeit $100 FRNs. WARRINGTON was present at the store and left with DEMPSEY in the same direction.



At 1855 hours GARMAN passed a counterfeit $100 FRN.



At 2228 hours DEMPSEY called GARMAN, call not completed.

At 2228 hours GARMAN called DEMPSEY, call not completed.

At 2247 hours DEMPSEY called GARMAN, call not completed.

35.  <u>MAY 23, 2021</u> - At 0045 hours GARMAN's phone registered a screenshot from a location near WARRINGTON and TOWERS' residence. The screenshot was a list of vehicle identification numbers ("VINs") including the 2018 Nissan Rogue that WARRINGTON, DEMPSEY, and TOWERS were stopped in.

Continuing on May 23rd, at 1035 hours DEMPSEY purchased cigarettes at the Dollar General using a $100 counterfeit FRN.



At 1056 hours GARMAN was geo-located in Chestertown, MD (screenshot on his phone showing location).

At 1225 hours WARRINGTON and DEMPSEY reloaded a Greendot card at Dollar General for $500 using five counterfeit $100 FRNs (two still photos).





At 1307 hours, WARRINGTON passed a counterfeit $100 FRN at Dollar General.



At 1350 hours GARMAN and Smith were on the Chesapeake Bay Bridge (source cell phone video).

At 1939 hours DEMPSEY purchased a phone card and at 1944 hours reloaded a Greendot card for $200 using two counterfeit $100 FRNs.



36. <u>MAY 24, 2021</u> - At 0104 hours GARMAN was in Chestertown, MD (screenshot geolocation of credit card and PII for ID theft victim on phone).

At 0608 hours TOWERS called a contact named "Philly" (████-5563 (a number DEMPSEY independently provided as one of GARMAN's cell phone numbers.) The call was not completed.

At 0611 hours TOWERS called Philly (AKA GARMAN), call not completed.

At 0612 hours TOWERS texted Philly (AKA GARMAN) "Yo…Let's you and I hangout and go to slots dpw whatever you wanna do. So you can get away for a lil while"

At 0613 hours TOWERS texted Philly (AKA GARMAN) "Jason said you don't want him to go, can he borrow a couple dollars and you so I can make Quick flip" (Note, this text appears to be written by someone other than TOWERS, possibly DEMPSEY from TOWERS'S phone).

At 0752 hours DEMPSEY reloaded a Greendot card at the Dollar General for $300 using three counterfeit $100 FRNs. At 0800 hours, she passed an additional $100 counterfeit FRN at the Dollar General.



At 0848 hours GARMAN texted unknown person "I do t want to go back without a car so. We need to get on that…"

At 0902 hours TOWERS called Philly (AKA GARMAN), the call lasted 5 seconds and it is unknown if it was completed.

At 0909 hours Officer McLaughlin responded to Dollar General to take a report of four $100 counterfeit FRNs passed by DEMPSEY earlier that morning.

At 0932 hours, Officer McLoughlin responded to WARRINGTON AND TOWERS' residence to make contact with the residents as she was familiar with the location having vehicles with stolen tags parked in front. The mobile home park is directly across and within view of the Dollar General. Upon arrival, she noticed a silver Nissan Rogue bearing Oklahoma temporary tags that was out of place and took a photograph. No one immediately answered the door.

At 0941 hours, TOWERS called Philly (AKA GARMAN), the call lasted 8 seconds although it is unknown if it was completed.

At 0943 hours, TOWERS called Philly (AKA GARMAN), call was not completed.

At 0944 hours, TOWERS texted Philly (AKA GARMAN) "Philly don't come back yet.  We will call or meet you"

At 1004 hours, TOWERS called "Boogie", the call lasted 9 seconds although it is unknown if it was completed. (The identity of "Boogie" is currently unknown; however, there are multiple texts on TOWERS'S phone regarding what appear to be illegal drug purchases from this individual).

At 1006 hours, TOWERS called Boogie, the call lasted 1 second although it is unknow if it was completed.

At 1007 hours, TOWERS received a text from Boogie "Sup"

At 1007 hours, TOWERS called Boogie, the call lasted 3 minutes and 4 seconds.

At 1010 hours, TOWERS texted Boogie, "Sorry started crying"

At 1024 hours, TOWERS called WARRINGTON, the call lasted 54 seconds.

At 1032 hours, WARRINGTON called TOWERS, call not completed.

At 1056 hours, TOWERS called DEMPSEY, the call lasted 1 minute and 42 seconds.

At 1100 hours, TOWERS received a call from WARRINGTON, the call lasted 1 minute and 5 seconds.

At 1103 hours, TOWERS texted WARRINGTON "Not answering it's the feds don't go out there" and then "love you ride or die"

At 1103 hours, WARRINGTON texted TOWERS "Love you ride or die"

At 1116 hours, TOWERS texted WARRINGTON "Stay there til I get back love you erase all messages"

At 1124 hours, TOWERS texted Philly (AKA GARMAN) "Yo I'm off shorty don't trust her she scared"

At 1125 hours, TOWERS texted Philly (AKA GARMAN) "Give me the green light" and then "Yo"

At 1151 hours, GARMAN called DEMPSEY, call not completed.

At 1152 hours, GARMAN called DEMPSEY, call not completed. A screenshot showed DEMPSEY'S number blocked as well as Smith's number.

At 1228 hours, WARRINGTON texted TOWERS Smith's phone number (610-568-2218) and "Call Tracey a Philly"

At 1229 hours, WARRINGTON texted TOWERS "That's the number tell them 544"

At 1231 hours, TOWERS texted Smith "Ask philly can I borrow money for motel tonight please"

At 1233 hours, WARRINGTON texted TOWERS "Tell them you need money to give it to me or Billy [neighbor Wooters] when when drop please"

At 1233 hours, TOWERS texted WARRINGTON "I did he said no"

At 1234 hours, WARRINGTON texted TOWERS "Billy [Wooters] can take them the car then"

At 1234 hours, TOWERS texted WARRINGTON "He can't drive stick just go ask again please"

At 1300 hours, Officer McLoughlin attempted to serve a summons to TOWERS at his residence concerning the vehicle tag thefts and spoke to WARRINGTON.

At 1312 hours, DEMPSEY texted TOWERS "She told the cop she was getting the car out of her yard they told her to take it to them they won't going to mess with her"

At 1405 hours, Officer McLoughlin texted WARRINGTON in an attempt to make contact with her.

At 1844 hours, GARMAN called DEMPSEY, call not completed.

At 2048 hours, TOWERS texted Philly (AKA GARMAN) "Send me money please"

At 2213 hours, TOWERS texted Boogie "On the run need few dollars til tomorrow"

At 2354 hours, TOWERS texted Boogie "I need a few dollars for a motel room. I got ya if you can help plz. Missy is with me"

    37. <u>May 25, 2021</u> – At 0829 hours, GARMAN and Smith were on the Chesapeake Bay Bridge Tunnel (Cell phone photo).

At 0835 and again at 0837 hours, GARMAN dialed the Kent County Sheriff's office. The first call did not appear to be completed, and the second call lasted one minute.

At approximately 1313 hours, the Delaware State Patrol initiated the vehicle stop on the Nissan Rogue driven by DEMPSEY. The incident was terminated at approximately 1600 hours.

At 1629 hours, TOWERS texted Philly (AKA GARMAN) "Call me"

At 1630 hours DEMPSEY texted TOWERS "The cop from md is meet ing me st ur house dont come yet"

38.  On June 21, 2021, USSS Baltimore Field Office personnel received 15 counterfeit $100 FRNs passed at Dollar General from BB&T Bank.  Upon review of these notes, the below was noted: 2 FRNs bearing S/N HL 63614382E, Federal Reserve Bank L13; 9 FRNs bearing S/N HL 63614383E, Federal Reserve Bank L33; and 4 FRNs bearing S/N HE 63614383E, Federal Reserve Bank E33.  All the counterfeit FRNs were printed on resume style paper except for the four counterfeit FRNs notes printed on genuine $10 FRN paper (commonly referred to as "bleached" notes).  This information corroborated GARMAN's statements made during his custodial interview.

## CONCLUSION

Based on the above information, I respectfully assert there is probable cause to believe that Tina DEMPSEY, Melissa WARRINGTON, Jason TOWERS, and Chad GARMAN Conspired to Utter Counterfeit Obligations (18 U.S.C. § 472) in violation of 18 U.S.C. § 371.

Your Affiant affirms under penalty of perjury that the facts and circumstances recounted in the foregoing affidavit are true and accurate to the best of her knowledge and belief.

WENDY S
DUSHANE
Digitally signed by
WENDY S DUSHANE
Date: 2021.07.12
16:53:25 -04'00'

Wendy DuShane
Special Agent, USSS

Affidavit submitted by email and attested to me as true and accurate by telephone con_istent with Fed. R. Crim. P. 4.1 and 4(d) on this 14 day of July, 2021.

HONORABLE THOMAS M. DIGIROLAMO
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MARYLAND